### William Hayes, Plaintiff in Error, v. The People of the State of Illinois, Defendant in Error.

### Gen. No. 14,332.

1. ASSAULT AND BATTERY—*when ejection does not constitute.* After a person on private premises has raised a disturbance and been requested to leave, he may be lawfully ejected from such place and no assault is committed if no unnecessary force is employed in such ejectment.

2. CRIMINAL LAW—*extent of application of rule to prove beyond a reasonable doubt.* The rule in regard to reasonable doubt applies to all offenses of every degree, whether greater or lesser, and it is

the right of the accused, under a well-founded doubt of his guilt, to have a verdict of acquittal.

Prosecution for assault and battery. Error to the Municipal Court of Chicago; the Hon. MCKENZIE CLELAND, Judge, presiding. Heard in this court at the March term, 1908. Reversed. Opinion filed February 15, 1909.

SEARS, MEAGHER & WHITNEY, for plaintiff in error; FREDERICK A. FREEARK, of counsel.

JOHN J. HEALY, for defendant in error; WILLETT H. CORNWELL, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The plaintiff in error, Hayes, was arrested on a so-called "John Doe" warrant, charging him with committing an assault and battery upon the person of one C. Goodman, and upon a trial before a judge of the Municipal Court of Chicago, without the intervention of a jury, a trial by jury having been waived, was found guilty and fined $15 and condemned to pay the costs of the prosecution. From this judgment Hayes seeks a review of the record in this court and a reversal of the judgment of conviction.

Hayes, at the time of the alleged assault and battery, was a special policeman, wearing a "star" and clothed in the garb of a city police officer, in the employ of the People's Gas Light & Coke Company, on duty at its office at the corner of Twelfth Street and Blue Island avenue. Goodman was a consumer of gas of the Gas Company, and at the time in question was at its office, above mentioned, for the purpose of paying a bill for gas which he owed to the Gas Company. On his appearance at the office there was a line of people seeking to discharge their indebtedness to the Company, and Hayes was there to see that each person on arrival took an appropriate place in the line and to preserve order. Goodman said he was in a great hurry and wanted to pay his bill at once and get away

without the delay necessarily following his taking his place in the line. He thereupon spoke to Hayes and asked him to let him pay his bill at once. Hayes told him he could not do so, but must take his place in the line and be treated as all the rest of the persons then present were treated; that all persons were entitled to equal privileges. Goodman was abusive to Hayes, and reluctantly took his place in the line, and during his progress toward the paying window was quarrelsome in his conduct and language toward Hayes. When he finally arrived at the paying window he renewed his complaint of Hayes to the receiving teller, and kept up a conversation with Hayes and threatened to report him and get his job from him. After paying his bill he lingered at the window, talking in a quarrelsome way all the time, and upon being informed by both Hayes and the receiving teller that he must cease making a disturbance and go away about his business, he still persisted in continuing his disorderly conduct, refusing to go away. Hayes threatened to put Goodman out unless he departed peacefully. On further refusal Hayes attempted to remove him. Goodman resisted by clutching hold of the window, and when Hayes forcibly removed Goodman to the door, he grabbed it, and Hayes thereupon thrust him through it into the street. In the tussle Goodman's head was knocked against the door, bruising it. Goodman then swore out the warrant under which Hayes was arrested and fined.

We have examined the evidence in this record with care, and are convinced that the greater weight of the evidence sustained the facts of the occurrence substantially as above stated. We find nothing to be reprobated in the conduct of Hayes in this affair. He was simply enforcing an orderly regulation necessary to the conduct of his employer's business at that place. Every request he made of Goodman was reasonable, and we can find no excuse for the glaringly disorderly conduct of Goodman. It was Goodman who was in

bad temper, not Hayes. It was Goodman who was disorderly, not Hayes. It is Goodman's conduct which was reprehensible, and not Hayes'. Goodman was in fault from the beginning to the end. His actions were inexcusable. All the force used by Hayes in removing Goodman from the window and finally putting him out of the store into the street, was made necessary by Goodman's continued resistance. Hayes used no more force in lawfully removing Goodman than was essential to accomplish that end. Goodman was engaged in unwarrantably creating a disturbance upon the Gas Company's premises, tending to a breach of the peace, and as a peace officer, in the preservation of order, it became the duty of Hayes to remove him and to use, in so doing, all necessary force. He was not, however, justified in using any more force than was actually essential to effect Goodman's removal and the evidence in its entirety fails to show that Hayes was guilty of the use of any excessive force. If Goodman had been peaceably inclined, he would have left without engaging in a scuffle, for his rights, if wrongfully evicted, would have been as fully preserved by going out at the command of Hayes, accompanied by a threat to enforce such command, as by resisting the efforts made to remove him.

The case of Woodman v. Howell, 45 Ill. 367, is, we think, controlling of the case at bar. While the Woodman case was one for damages for a trespass *vi et armis*, its principles are equally applicable to a criminal action for assault and battery. In the Woodman case the employe put the plaintiff out of the premises of his employer by the use of such force as was made necessary to expel him, after a request that he leave, and the Supreme Court held that he was justified in so doing and was not answerable for any damages not resulting from the use of excessive force. Commonwealth v. Clark, 43 Mass. 23, is to a like effect.

At the close of the evidence, and after the infliction of a fine of $25, the State's representative who con-

ducted the prosecution, seemingly convinced from the proofs, as we are, that no case had been made out warranting a conviction of Hayes, moved the court to vacate the judgment, but on intimation from the presiding judge that he would not entertain it, withdrew the motion, whereupon the judge reduced the fine to $15. What influenced the judge to refrain from entertaining the State's motion, we are unable to discover. Neither can we understand the logical processes by which he reached the conclusion he did. That the court was at least in doubt as to the guilt of Hayes is, we think, made evident from the fact that he immediately reduced the fine from $25 to $15. If the trial court had a reasonable doubt as to Hayes' guilt, it was its duty to resolve it in favor of Hayes. It is the law that every person on trial for an offense which may be punished by imprisonment, must be adjudged guilty from the proofs, beyond a reasonable doubt. Moore's Criminal Law, 809.

For non-payment of the fine imposed Hayes could be imprisoned in the House of Correction until he had worked it out at the rate of $1.50 a day. Moore states the rule thus: "The rule in regard to a reasonable doubt applies to all offenses of every degree, whether greater or lesser, and it is the right of the accused, under a well-founded doubt of his guilt, to have a verdict of acquittal. The jury have no discretion about it. Reins v. People, 30 Ill. 257; Stuart v. People, 73 ibid. 20; Marlatt v. People, 104 ibid. 364; Price v. People, 109 ibid. 109.

The judgment of conviction by the Municipal Court being erroneous, is reversed.

*Reversed.*